UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GARY T. MANTOVANI,

                Plaintiff,

     - against -                    **MEMORANDUM & ORDER**
                                                     09-CV-3957 (RRM)

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
------------------------------------------------------------X
**MAUSKOPF, United States District Judge.**

      Plaintiff Gary T. Mantovani ("Plaintiff") brings this action against Michael J. Astrue, Commissioner of the Social Security Administration ("Defendant"), seeking review, pursuant to 42 U.S.C. § 405(g), of Defendant's determination that he is not entitled to disability insurance benefits under Title II of the Social Security Act ("SSA"). Plaintiff and Defendant each cross-move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ("Def.'s Mem." (Doc. No. 12); "Pl.'s Mem." (Doc. No. 14).) For the reasons set forth below, Defendant's motion is DENIED and Plaintiff's motion is GRANTED, but only to the extent that the case is remanded for further proceedings consistent with this decision.

## BACKGROUND

      Plaintiff was born on September 3, 1954. (Administrative Transcript ("Tr.") (Doc. No. 15) at 35.) Plaintiff alleges that on or about July 1, 2000, his asthma, emphysema, poor memory, and borderline intelligence rendered him disabled and unable to work. (Compl. (Doc. No. 1) ¶ 4.) On April 18, 2002, Plaintiff filed an application for Social Security Disability Insurance ("SSDI") Benefits. (*Id.* ¶ 6; Tr. at 35–37.) Plaintiff's application was denied, and he requested a hearing before an administrative law judge. (Tr. at 19-A, 33–34.) Plaintiff, represented by legal

counsel, testified at a hearing before an Administrative Law Judge ( "ALJ") on April 28, 2009. (*Id*. at 137–56.) On May 7, 2009, the ALJ found that Plaintiff was not disabled under the Social Security Act. (Compl. ¶¶ 7–8; Tr. 9–19.) On May 28, 2009, Plaintiff filed a request with the Appeals Council for reconsideration. (*Id.* ¶ 9.) On August 11, 2009, the Office of Disability Adjudication and Review denied Plaintiff's request for review and upheld the ALJ's decision. (*Id.* ¶ 10; Tr. 3–6.)

Plaintiff filed this action on September 14, 2009, alleging that the decision of the ALJ is not supported by substantial evidence and is contrary to the law and provisions of the Social Security Act. (Compl. ¶¶ 12–13.)

## **STANDARD OF REVIEW**

When a district court reviews the final determination of the Commissioner, it does not determine *de novo* whether the claimant is disabled. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the court "may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "[S]ubstantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Where the Commissioner makes a legal error, a "court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ." *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (citation omitted). The ALJ's failure to apply the correct legal standard is grounds for reversal. *Townley*, 748 F.2d at 112 (citation omitted).

**DISCUSSION**

The Social Security Administration's regulations require a five-step analysis for determining whether a claimant is disabled:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998).

1. The Decision of the ALJ

At the first step, the ALJ found that Plaintiff did not engage in substantial gainful activity from the time of his alleged onset date of July 1, 2000 through December 31, 2002, which is the relevant disability period. (Tr. at 14.) At step two, the ALJ found that Plaintiff was severely impaired by asthma, emphysema, borderline intelligence, and poor memory. (*Id.*) At step three, the ALJ found that these impairments did not meet or qualify as the medical equivalent of any of the listed impairments. (*Id.*) The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), which is based on all relevant medical and other evidence in the record. 20 C.F.R. § 404.1520(e). The ALJ determined that Plaintiff had the RFC to perform simple, sedentary work. (Tr. at 15.) At the fourth step, the ALJ found that Plaintiff was unable to perform his past work

3

as a supermarket stock clerk and lot worker because those jobs required "medium-to-heavy exertional capacity." (*Id.* at 18.) At the fifth step, the ALJ determined that there existed a significant number of jobs in the national economy that Plaintiff could have performed despite being limited to simple, sedentary work. (*Id.*) Accordingly, the ALJ found that Plaintiff was not disabled for purposes of the SSA and was thus ineligible for benefits. (*Id.* at 19.)

2. Treating Physician Rule

"Treating source" is defined as a claimant's "physician, psychologist or other acceptable medical source" who provides, or has provided, the claimant "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502. The ALJ generally affords greater weight to the opinions of treating sources than consultative professionals or sources that have not examined the claimant. *Id.* § 404.1527(d)(2). If the treating source's opinion regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," the opinion receives "controlling weight." *Id.* This is known as the "treating physician rule." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

When a treating physician's opinion is not given "controlling" weight, the ALJ must consider several factors to determine the amount of weight it should receive. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include, "the length of the treatment relationship and the frequency of examination; the [n]ature and extent of the treatment relationship; the relevant evidence . . ., particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Id.* (internal quotations omitted). The Administration must "provide good reasons for

4

the weight [given] to the treating sources opinion." *Halloran*, 362 F.3d at 32–33 (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotations omitted). This requirement aids courts in their review of the Administration's decision. *Id.* As the ALJ has an affirmative duty to develop the administrative record, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). The ALJ's duty to develop the record exists "even when the claimant is represented by counsel." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Moreover, "the ALJ must not only develop the proof but carefully weigh it." *Donato v. Secretary of Dep't of Health & Human Servs.*, 721 F.2d 414, 419 (2d Cir. 1983).

Here, the ALJ accorded "limited weight" to the opinion of Dr. Ralph Iorio, who has been Plaintiff's internal medicine specialist since March 1997, because the ALJ determined that, as it pertained to the relevant period, his diagnosis was "not supported by objective diagnostic tests, clinical signs or treatment received during the relevant time." (Tr. at 17, 104.)[1] Plaintiff argues that the ALJ failed to comply with his affirmative duty to re-contact Dr. Iorio in order to seek clarification or additional evidence as required by 20 C.F.R. § 404.1512(e)(1). (Pl.'s Mem. at 7.) Defendant has not responded this argument.

It is well-settled that the ALJ must develop the record, s*ee Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (ALJs have duty to "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceedings"), and make "every reasonable effort" to help the claimant get his medical reports. 20 C.F.R. § 404.1512(d). Moreover, the regulations specifically provide that the ALJ "*will seek* additional evidence or clarification" from a claimant's treating physician "when the report from [the treating physician] . . . does not appear

---

[1] The ALJ also found that Dr. Iorio's opinion was inconsistent with Plaintiff's "participation in a broad range of activities of daily living" during the relevant period. (Tr. at 17.)

to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(e)(1) (emphasis added).

Here, before according "limited weight" to Dr. Iorio's opinion because it was not supported by "objective diagnostic tests or clinical signs," the ALJ was required to request from him "additional evidence or clarification" as required by the regulations. *See Cedeno v. Comm'r of Soc. Sec.*, 315 Fed. App'x 352, 353 (2d Cir. 2009) (affirming district court order of remand for further proceedings where the ALJ did not give controlling weight to opinion of treating physician because it was "not supported by clinical and laboratory diagnostic tests *without first seeking additional evidence as required by the relevant regulations*" (citing 20 C.F.R. § 404.1512(e) (emphasis added); *id.* § 416.912(e))); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings [of the treating physician's opinion] were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte*."); *Pluck v. Astrue*, 10-CV-2042 (JG), 2011 U.S. Dist. LEXIS 23914, at * 65–66 (E.D.N.Y. Mar. 9, 2011) (remanding for further proceedings where ALJ found that treating physician's opinion was not supported by "objective or clinical evidence," but ALJ did not "seek additional evidence or clarification" from the treating physician (citing 20 C.F.R. § 404.1512(e)(1)); *Taylor v. Astrue*, No. CV-07-3469 (FB), 2008 U.S. Dist. LEXIS 46619, at *9–10 (E.D.N.Y. June 17, 2008) (same); *Rivas v. Barnhart*, No. 01-CV-3672 (RWS), 2005 U.S. Dist. LEXIS 1114, at *66–67 (S.D.N.Y. Jan. 27, 2005) ("[W]here, as here, an ALJ concludes that the opinions or reports rendered by a claimant's treating physicians lack objective clinical findings, she may not reject the opinion as unsupported by objective medical evidence without taking affirmative steps to develop the record in this regard.") (collecting cases).

The record is wholly devoid of any evidence suggesting that the ALJ developed the record in any way, such as by re-contacting Dr. Iorio for an explanation of his opinion or to request additional evidence. And Defendant, in failing entirely to respond to this argument, provides the Court with no reason to suspect that he did, or to excuse his failure to so do.

When an ALJ fails to adequately develop the record in reaching his determination of a claimant's residual functional capacity, "the Court need not – indeed, cannot – reach the question of whether the [ALJ's] denial of benefits was based on substantial evidence." *Jones v. Apfel*, 66 F. Supp. 2d 518, 542 (S.D.N.Y. 1999). Rather, when, as in this case, the ALJ has failed to fully develop the factual record, the proper remedy is to remand the case for further proceedings. *Rosa*, 168 F.3d at 83; *Kirkland v. Astrue*, No. 06-CV-4861 (ARR), 2008 U.S. Dist. LEXIS 39056, at *23 (E.D.N.Y. Jan. 29, 2008) ("Remand for additional proceedings is particularly appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, 'further findings would . . . plainly help to assure the proper disposition of [a] claim.'" (quoting *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004))).

For all of these reasons, this case must be remanded pursuant to 42 U.S.C. § 405(g) for the ALJ to comply with the requirements of 20 C.F.R. §§ 404.1512(e)(1), 416.912(e) in a manner consistent with this decision.

3. <u>Credibility Determination</u>

Plaintiff argues that the ALJ incorrectly "premised his credibility analysis solely upon the plaintiff's concession that he could perform certain basic activities of daily living." (Pl.'s Mem. at 11 (citing Tr. at 17).) This argument has merit. An ALJ must evaluate the credibility of plaintiff's report of her symptoms through a two-step analysis. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). First, "the ALJ must decide whether the claimant suffers from a medically

determinable impairment that could reasonably be expected to produce the symptoms alleged."
*Id.* (citing 20 C.F.R. § 404.1529(b)). And second, "[i]f the claimant does suffer from such an impairment . . . the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id.* (citing 20 C.F.R. § 404.1529(a) (internal quotation marks omitted)). In determining a claimant's credibility, the ALJ must consider the following factors: "(1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain." *Meadors v. Astrue*, 370 F. App'x 179, 184 n.1 (2d Cir. 2010) (citing 20 C.F.R. §404.1529(c)(3)).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 17.) In making this credibility determination, however, the ALJ neither explicitly referred to the factors listed in 20 C.F.R. § 404.1529(c)(3), nor discussed any of them beyond listing some of Plaintiff's daily activities.[2] *See Grosse v. Comm'r of Soc. Sec.*, No. 08-CV-4137 (NGG), 2011 U.S. Dist. LEXIS 3869, at *13 (E.D.N.Y. Jan. 13, 2011) (ALJ "committed legal error" because

---

[2] The Court notes that many of the daily activities listed by the ALJ are "mundane tasks of life," which "do not necessarily indicate that he is able to perform a full day of sedentary work." *Martin v. Astrue*, 07-CV-3911 (LAP) (RLE), 2009 U.S. Dist. LEXIS 66824, at *34 (S.D.N.Y. Apr. 23, 2009) (citing *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (claimant who sometimes drives a car, attends church, and helps wife with shopping may still be unable to perform sedentary work)); *see also Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988) ("a claimant need not be an invalid to be found disabled"). On remand, the ALJ should make a proper credibility determination in light of this principle, and make clear how the nature and extent of Plaintiff's routine daily activities undermines the credibility of his statements about his symptoms. *Martin*, 2009 U.S. Dist. LEXIS 66824, at *34.

8

he failed to consider any of the credibility determination factors except the claimant's daily activities). Moreover, "[t]he ALJ did not identify what facts he found to be significant, indicate how he balanced the various factors, or specify which of [Plaintiff's] alleged symptoms he found to be not credible." *Simone v. Astrue*, No. 08-CV-4884 (CPS), 2009 U.S. Dist. LEXIS 84505, at *40 (E.D.N.Y. Sept. 16, 2009). This failure to comply with the regulatory requirements for evaluating Plaintiff's credibility also requires remand. *See Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) ("[W]here credibility determinations and inference drawing is required of the ALJ . . . [the court should] not hesitate to remand the case for further findings or a clearer explanation for the decision." (citations omitted)); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 352 (E.D.N.Y. 2010) (ordering remand where ALJ improperly drew own conclusions that plaintiff's daily functions were inconsistent with his subjective complaints).

      4.      <u>Remaining Claims</u>

Plaintiff also claims that the ALJ erred by failing to consult a vocational expert in making the step five determination. (Pl.'s Mem. at 9–10.) This argument, however, is premature because the ALJ "should have the initial opportunity to [decide whether to consult a vocational expert] in conjunction with the reexamination of the medical evidence upon remand." *Rodriguez v. Barnhart*, No. 04-CV-949 (SHS), 2004 U.S. Dist. LEXIS 25914, at *29 (S.D.N.Y. Dec. 23, 2004) (citing *Rosa*, 168 F.3d at 83). The ALJ, however, should carefully consider whether the assistance of a vocational expert would be helpful in this case. *See Regan v. Astrue*, No. 09-CV-2777 (BMC), 2010 U.S. Dist. LEXIS 35811, at *42–43 (E.D.N.Y. Apr. 8, 2010) (remanding and ordering that "[i]f the fifth step of the sequential analysis is reached, the Court suggests the ALJ enlist the assistance of a vocational expert" (citing *Rosa v*, 168 F.3d at 78)).

## **CONCLUSION**

For the reasons set forth above, Defendant's motion for judgment on the pleadings is DENIED and Plaintiff's motion is GRANTED, but only to the extent that the case is remanded for further proceedings consistent with this Order. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2011

/S/
_____
ROSLYNN R. MAUSKOPF
United States District Judge